IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Michael W. Jeffcoat,                        )    Civil Action No.: 8:13-cv-00124-DCN-JDA
                                            )
                        Plaintiff,          )
                                            )
            vs.                             )    **REPORT AND RECOMMENDATION**
                                            )    **OF MAGISTRATE JUDGE**
Warden of Broad River Correctional          )
Institution,                                )
                                            )
                        Defendant.          )

        Petitioner brought this action seeking habeas corpus relief pursuant to 28 U.S.C. §

2254. This matter is before the Court on Respondent's motion for summary judgment [Doc.

16]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(c),

D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit

findings and recommendations to the District Court.

        Petitioner filed his Petition for writ of habeas corpus on January 8, 2013.[1] [Doc. 1.]

On April 1, 2013, Respondent filed a motion for summary judgment and a return and

memorandum. [Docs. 15, 16.] On April 2, 2013, the Court filed an Order pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner to respond to the

motion and of the possible consequences if he failed to adequately respond. [Doc. 17.]

Petitioner filed a timely response to Respondent's motion on April 29, 2013. [Doc. 19.]

        Having carefully considered the parties' submissions and the record in this case, the

Court recommends Respondent's motion for summary judgment be granted and the

Petition be denied.

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for
forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing
date in the light most favorable to Petitioner, this action was filed on January 8, 2013. [Doc. 1-1.]

## BACKGROUND

Petitioner is incarcerated at the Broad River Correctional Institution ("Broad River"), which is under the direction of the South Carolina Department of Corrections ("SCDC"). [Doc. 1 at 1.]  A grand jury indicted Petitioner in February 1998 for criminal sexual conduct in the first degree (Case No. 98-GS-32-521) and kidnaping (Case No. 98-GS-32-522).[2] [Doc. 15-9.]  A jury found Petitioner guilty of both counts and he was sentenced on April 28, 1999 to life in prison without parole.  [Doc. 1 at 1.]

Plaintiff does not dispute the material facts related to the crime.  Petitioner had a car accident outside of the victim's home.  [App. at 646.]  He had been drinking "pretty much that whole week," including right before the accident, and did not want to be arrested for driving under the influence.  [*Id.* at 635.]  Petitioner admitted that he was "heavily intoxicated," and between the intoxication and the wreak, he "couldn't have been in [his] right frame of mind."  [*Id.* at 635.]  Petitioner approached the victim's house and asked if he could use her phone to call his father.  [*Id.* at 647.]  The victim allowed him to come in to use the phone.  [*Id.*]  Once inside the home, Petitioner raped the victim.  [*Id.* at 642--43.]  He testified that he woke up to find himself raping her, which confused him due to his head injury, and he ran from the scene.  [*Id.* at 677.]  The victim identified Petitioner as her rapist, Petitioner admitted his guilt and Petitioner had a prior record of rape.  [*Id.* at 678.]

### Direct Appeal

Petitioner filed a timely notice of appeal.  On May 3, 1999, Michael Ray Ellison filed a brief on Petitioner's behalf in the South Carolina Court of Appeals, raising the following

---

[2] Petitioner was found not guilty on an indictment charging him with first degree burglary.  [Doc. 15-13 at 2.]

issues:

> 1. The lower court erred in failing to charge the jury that intoxication is a defense where it has produced permanent insanity.
>
> 2. The lower court erred in imposing the unconstitutional sentence of life without parole in appellant's case.
>
> 3. The lower court erred in admitting two prejudicial photographs into evidence at trial.
>
> 4. The lower court erred in denying appellant's request for a continuance in order to obtain a neuropsychologist to determine whether appellant's head rendered him *non compis mentis* and thus not minimally liable on the charges.

[Doc. 15-11 at 3.] On June 25, 2002, the South Carolina Court of Appeals issued an unpublished opinion affirming the convictions. [Doc. 15-13.] As to the first ground, the Court of Appeals found that this issue was not preserved for appeal. During his trial, Petitioner requested a general jury instruction that voluntary intoxication could be a defense to a crime, a defense that the South Carolina Supreme Court expressly rejected in *State v. Vaughn*, 232 S.E.2d 328 (S.C. 1977). "Jeffcoat did not request a charge on the permanent insanity exception, and we note defense counsel specifically advised the trial court both during pretrial proceedings and again at trial that he was not asserting claims of mental incompetence or mental illness, either presently or at the time of the assault." [Doc. 15-13 at 3.] Therefore, the matter was not properly before the Court of Appeals because "issues must be raised to and ruled upon by the trial judge to be preserved for appellate review and may not be raised for the first time on appeal." [*Id.* at 4 (citing *State v. Forrester*, 541 S.E.2d 837, 844 (S.C. 2001)).]

Like in the current Petition, Petitioner also argued on direct appeal that his sentence of life without parole was unconstitutional. The Court of Appeals held that under South Carolina Code § 17-25-45(A), a recidivist may be sentenced to a mandatory life sentence

without parole when that person has one or more prior convictions for a "most serious offense." [Doc. 15-13 at 4.] The statute was upheld in *State v. Jones*, where the South Carolina Supreme Court found that the statute did not violate the prohibition on cruel and unusual punishment because such a punishment was not out of proportion with the severity of the crimes sought to be punished. [*Id.* at *5*., quoting *Jones*, 543 S.E.2d 541 (S.C. 2001).] As to the photographs in ground three, the Court of Appeals found that Petitioner did not object to the first picture, so no objection was preserved for appellate review. [*Id.*] As to the second photograph, the appeals court found that the trial court did not abuse its discretion in admitting the evidence. [*Id.*] Finally, the Court of Appeals found that Petitioner's fourth ground, that the trial court erred in not allowing him a continuance, was not preserved for appellate review. [*Id.* at 6.] Therefore, Petitioner's convictions were affirmed. Remittitur was issued on July 15, 2002. [Doc. 15-14.]

**PCR Proceedings**

On October 25, 2005, Petitioner filed a pro se application for post-conviction relief ("PCR") in which he raised the following claim:

> [Petitioner] wrecked car in [redacted]'s yard just prior to alleged assault sustaining brain hemorrhage, and trial lawyer did not provide doctors to tell jury about what brain injury can cause people to do to themselves and others. Trial lawyer promised to [Petitioner] that they would.

[Doc. 15-15 at 2.] In support of his ineffective assistance of counsel claim, Petitioner alleged the following facts, quoted verbatim:

> Jury was not informed by doctors of brain injury caused by wreck in Ms. [redacted]'s front yard.

[*Id.* at 3.] The respondent interpreted Petitioner's PCR claims to be claims that he received ineffective assistance of counsel. [Doc. 15-16 at 2.]

4

An evidentiary hearing was held on December 4, 2009, where Petitioner was represented by Michael Chesser.  [Doc. 15-18 at 3.]  Mr. Chesser specified that Petitioner was proceeding on an ineffective assistance of counsel claim because counsel did not arrange for a proper medical examination for Petitioner to assert the defense of insanity and because counsel did not receive proper notice that the state intended to seek a life sentence.  [App. at 612.]  At the hearing, testimony was received from Michael Ellison (trial counsel) and Petitioner.  [Doc. 15-18 at 3.]  Petitioner testified that he believed his lawyer was ineffective because counsel did not have Petitioner examined by a neurosurgeon to prove that Petitioner raped the victim because of a head injury.  [App. at 638.]  Petitioner also believed his lawyer should have presented case law to demonstrate that the state court did not have subject matter jurisdiction to sentence Petitioner to a life sentence because his prior conviction should not have qualified as a "most serious offense."  [*Id.* at 641.] Finally, Petitioner insisted that the sentence was not appropriate because he had not penetrated the victim with his penis, but only his fingers.  [*Id.* at 642.]

On April 19, 2010, the PCR court issued an order denying and dismissing the application with prejudice.  [*Id.* at 674.]  The PCR court summarized the testimony received from Petitioner and his counsel, and found counsel's testimony that counsel investigated the possibility of a defense based on a head injury credible.  [*Id.* at 677.]  Counsel testified that he obtained a psychiatrist who testified at trial that the Petitioner showed signs of an amnestic disorder and that a CAT scan was performed on Petitioner, but the scan showed no signs of injury.  [*Id.* at 677--78.]  Counsel asked for a continuance to have more testing done on Petitioner, but that request was denied.  [*Id.*]

Applying the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the PCR court determined that trial counsel was competent and that he took

"steps to lay the foundation for [an insanity] defense, including procuring the services of a psychiatrist, investigating the results of [Petitioner's] CT scan, and moving for a continuance in order to obtain further testing." [*Id*. at 679.] Further, the PCR court determined that even if Petitioner could show that counsel was ineffective, Petitioner experienced no prejudice, because the CAT scan showed no sign of injury and the evaluation performed for purposes of the PCR hearing could "not definitively state that [Petitioner] was suffering from anything at the time of the offense." [*Id*.]

As to Petitioner's second claim for relief in his PCR petition, the court determined that Petitioner received sufficient notice that the state intended to seek a life sentence. [*Id*. at 680.] The South Carolina Supreme Court determined in *James v. State*, 641 S.E.2d 899 (S.C. 2007), that "as long as the defendant and his counsel, at least ten days prior to trial, possess actual notice of the State's intention to seek a sentence under South Carolina's recidivist statute, the statute has been satisfied." [*Id*., quoting *James*] The PCR court found that the state

> adduced evidence at the hearing in the form of a motion from [c]ounsel, filed April 14, 1999, to quash sentencing under § 17-25-45(h), which motion was heard April 22, 1999. It is uncontested that the [Petitioner] had been previously notified of the state's intent, but in any event at the hearing the State also produced a court record regarding prior service in open court of the notice of intent to seek a life sentence pursuant to § 17-25-45(a) on the [Petitioner]. The trial commenced April 26, 1999. Taking these two documents into account, particularly the motion to quash sentencing filed by [c]ounsel more than ten days prior to trial, this Court finds that the requirement of actual notice was satisfied with respect to both the Applicant and his [c]ounsel.

[*Id*. at 680--81.]

A notice of appeal was timely filed and served. On December 10, 2010, Robert M. Pachak of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the

PCR court's decision and raising the following issues:

> Whether there was any evidence to support the PCR judge's findings that the petitioner was given sufficient notice of the State's intent to seek a life sentence?

[Doc. 15-18.]  The case was transferred to the South Carolina Court of Appeals from the Supreme Court on January 13, 2012, pursuant to Rule 243(1), SCACR.  [Doc. 15-20.]  The Court of Appeals denied the petition on July 28, 2012, [Doc. 15-21], and issued remittitur on August 15, 2012 [Doc. 15-22].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on January 8, 2013, pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:

> **Ground One**:    Proper medical exam not prepared by attorney to present defense of head injury.
>
> *Supporting Facts*:    Doctor testimony not provided in trial to show where defendant had head injury.  CAT scan was performed (1) one year after accident and medical records of any brain damage could not be provided.
>
> **Ground Two**:    Trial lawyer never received the written consent of (LWOP) [life without parole.]
>
> *Supporting facts*:    No documentation or records to show that trial lawyer did indeed receive the written consent of (LWOP).
>
> **Ground Three**:    Two strike law of most serious offenses was unconstitutional, cruel and unusual punishment.
>
> *Supporting facts*:    1992 crime was a plea of a non-violent offense and therefore the courts did not have subject matter jurisdiction to sentence defendant to (LWOP).

[Doc. 1.]  Petitioner acknowledges that he did not raise Ground One in his petition for writ of certiorari to the Supreme Court and did not raise Ground Two in his direct appeal.  [*Id.*

7

at 11.]  He claims he failed to raise the grounds at various times because his attorneys represented to him that these claims had no merit.  [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition still may be subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such

8

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)    (I) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be

> denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653

S.E.2d 266 (S.C. 2007).[3]  Further, strict time deadlines govern direct appeal and the filing

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal

must be filed and served on all respondents within ten days after the sentence is imposed

or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R.

203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if

there is an appeal, within one year of the appellate court decision.  S.C. Code Ann.

§ 17-27-45(A).

      If any avenue of state relief is still available, the petitioner must proceed through the

state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson*

*v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173

(4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present

only those issues that were presented to the highest South Carolina court through direct

appeal or through an appeal from the denial of a PCR application, regardless of whether

the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d

850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme

Court is not required to exhaust available state court remedies: "[South Carolina] has

identified the petition for discretionary review to [the South Carolina Supreme Court] in

criminal and post-conviction cases as *outside* South Carolina's standard review process.

In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for

rehearing and certiorari following an adverse Court of Appeals' decision are not required

in order to exhaust all available state remedies." (emphasis in original) (citing *In re*

---

      [3]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

> *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims

14

> together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

16

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Respondent concedes that Petitioner appropriately exhausted his state court remedies for Grounds 2 and 3, but argues that Ground 1 is procedurally barred. The Court agrees.

As stated, South Carolina law requires that all grounds for relief be stated in the PCR application or on direct appeal. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley*, 221 S.E.2d at 770. Moreover, all issues must be appealed to the state's highest court. Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim. *See McKennedy*, 559 S.E.2d at 854 (S.C. 2002). If the state courts would apply a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed*, 468 U.S. at 11. While Petitioner raised Grounds 1 and 2 in his PCR application, he only appealed the PCR Court's decision that he received proper notice of the state's intent to pursue a life sentence (Ground 2) and not the claim that his counsel was ineffective for failing to properly assert an insanity defense (Ground 1).[4] Petitioner's claim in Ground 1 is thus

---

[4]The Court notes that, in denying Petitioner's petition for writ of certiorari, the South Carolina Court of Appeals did not specify a basis for its denial. [Doc. 15-21.] The United States Supreme Court has held that,

procedurally barred in this Court unless he can show cause and prejudice or a fundamental miscarriage of justice.  *See Carrier*, 477 U.S. at 495–96.

### *Cause and Prejudice or a Fundamental Miscarriage of Justice*

Petitioner's claim of ineffective assistance of counsel regarding medical exams and evidence is barred from review by this Court unless Petitioner has demonstrated (1) cause for the procedural default and actual prejudice resulting from the alleged constitutional violation or (2) that a fundamental miscarriage of justice has occurred.  *See Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 496; *Smith*, 477 U.S. at 533.  The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel or the petitioner's efforts to comply with the state's procedural rule.  *Carrier*, 477 U.S. at 488.  *But see Martinez v. Ryan*, --- U.S. ---, ---, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").  In this case, Petitioner has failed to even argue cause for the default of Ground 1. He merely reiterates his statement of facts from his Petition in his response.  [Doc. 19.] The only arguable statement he makes as to cause is that he is not educated to the law

---

> if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

*Coleman*, 501 U.S. at 735.  However,

> [t]his rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.  In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

*Id.* at 735 n.1.

and was never afforded proper representation in his trial and in his various post-trial proceedings. Petitioner provides no factual support for this contention and did not make a claim pursuant to *Martinez v. Ryan* that his PCR counsel was ineffective. Moreover, even if the Court construed this singular statement as a claim that PCR counsel was ineffective for failing to present both grounds to the South Carolina Supreme Court, he articulates no actual prejudice that he experienced. Finally, Petitioner also failed to argue a fundamental miscarriage of justice has occurred—i.e., that he is actually innocent. [*See id.*] Therefore, Ground One is barred from federal habeas review.[5]

**Merits of Remaining Claims**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and '*unreasonable* application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly

---

[5]  The Court notes that even if Ground One were not procedurally barred, Petitioner would not succeed on the merits because he fails to show that the state court decision was contrary to or an unreasonable application of federal law. The PCR court applied the proper standard of review to an ineffective assistance claim--*Strickland v. Washington*. The court determined that trial counsel's testimony was credible and Petitioner's testimony was not credible. The application of *Strickland* was not unreasonable. Therefore, Petitioner would be unsuccessful on the merits of Ground One.

> established precedent if the state court confronts a set of facts
> that are materially indistinguishable from a decision of this
> Court and nevertheless arrives at a result different from our
> precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application

of Supreme Court precedent when the decision "correctly identifies the governing legal rule

but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see*

*also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of this

Court. . . . It bears repeating that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to

or an unreasonable application of Supreme Court precedent unless applicable Supreme

Court precedent exists; without applicable Supreme Court precedent, there is no habeas

relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart*

*v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597

(7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

        "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*,

497 U.S. 764, 780 (1990).  "[I]t is only in circumstances impugning fundamental fairness

or infringing specific constitutional protections that a federal question is presented,"

*Grundler v. State of N.C.*, 283 F.2d 798, 802 (4th Cir. 1960); *see also Estelle v. McGuire*,

502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions.  In conducting habeas review, a federal

court is limited to deciding whether a conviction violated the Constitution, laws, or treaties

of the United States." *Id.* (citations omitted)).

### Notice of Life Sentence

Petitioner fails to state a claim for federal habeas relief in Ground 2. He asserts that his lawyer did not receive proper notice that the state intended to seek a life sentence. As noted, the PCR court found that the South Carolina Supreme Court determined in *James v. State*, 641 S.E.2d 899 (S.C. 2007), that "as long as the defendant and his counsel, at least ten days prior to trial, possess actual notice of the State's intention to seek a sentence under South Carolina's recidivist statute, the statute has been satisfied." [App. at 680.] The PCR court held that the state adduced sufficient evidence to conclusively demonstrate Petitioner received actual notice of the state's intent more than ten days before trial. [*Id.* at 680--81.] This determination clearly was an interpretation of state criminal law, not federal law as required for habeas relief. As noted above, it is not the province of this Court to determine if state courts made errors concerning state law. Therefore, summary judgment should be granted on Ground 2.

### Constitutionality of Life Sentence

In his final ground, Petitioner asserts that his sentence of life imprisonment without parole is unconstitutional because it constitutes cruel and unusual punishment.[6]  As discussed previously, the South Carolina Supreme Court held in *State v. Jones*, 543 S.E.2d 541 (2001), that S.C. Code § 17-25-45 is constitutional and does not violate the dictates against cruel and unusual punishment. The statute states that upon a conviction for a most serious offense as defined by the section, "a person must be sentenced to a

---

[6] To the extent that Plaintiff also articulates that the state court did not have jurisdiction over him in order to sentence him, such a claim is not cognizable in federal habeas corpus proceedings. *See Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (holding that once a state court has concluded that it has jurisdiction over a criminal case, the federal court will not disturb that finding).

term of imprisonment for life without the possibility of parole if that person has ... one or more prior convictions for ... a most serious offense...." S.C. Code Ann. § 17–25–45(A)(1). Both offenses for which Petitioner was convicted for purposes of the instant Petition, relevant to the current Petition are defined as "most serious offenses." *Id.* § 17–25–45(C)(1) (defining first degree criminal sexual conduct and kidnaping as most serious offenses.) Moreover, Petitioner pled guilty to second degree assault with intent to commit criminal sexual assault in 1992, which constitutes a predicate "most serious offense" under the statute. *See id.*; [Doc. 15-12 at 8.] Petitioner does not dispute these convictions but argues (1) that his first conviction was non-violent and (2) because he only digitally penetrated the victim, she "wasn't seriously hurt," therefore, his sentence is disproportionate and unconstitutional. [Doc. 19 at 3.] As Judge McDonald pointed out in *Cutner v. Thompson* in dismissing arguments similar to Petitioner's, this statute has "withstood repeated constitutional challenges." Civil Action No. 6:12-2807-GRA, 2013 WL 4505448, at *20 (D.S.C. Aug. 22, 2013). Courts in this District have repeatedly found that § 17–25–45 does not violate the prohibition against cruel and unusual punishment in that it is not a disproportionate punishment for the crimes committed. *See, e.g., White v. Burtt*, Civil Action No. 6:06-0906-TLW-WMC, 2007 WL 709001 (D.S.C. Mar. 5, 2007). Petitioner has advanced no arguments demonstrating to this Court why that precedent should not be followed. Therefore, summary judgment is appropriate on the merits of Ground 3.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that Respondent's motion for summary judgment [Doc. 16] be GRANTED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

December 18, 2013
Greenville, South Carolina